UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MELISSA ST. JEAN

                  Plaintiff,          12 Civ. 8822

    -against-

ORIENT-EXPRESS HOTELS INC.,         _Opinion_

                  Defendant.

------------------------------------X

A P P E A R A N C E S :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/7/13

        <u>Attorney for Plaintiff</u>
        DEREK SMITH LAW GROUP, PLLC
        30 Broad Street, 35th Floor
        New York, NY 10004
        By:  Derek Smith, Esq.


        <u>Attorneys for Defendant</u>

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        150 East 42nd Street
        New York, NY 10017
        By:  Harry P. Brett, Esq.
            William F. Cusack, Esq.

**Sweet, D.J.**

Defendant Orient-Express Hotels Inc. ("OEHI" or the "Defendant") has moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint (the "Amended Complaint" or "AC") of plaintiff Melissa St. Jean ("St. Jean" or the "Plaintiff"), alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII").

Upon the conclusions set forth below, the motion to dismiss is denied.

## I. **Prior Proceedings**

The Plaintiff filed her original complaint on December 5, 2012.  On February 15, 2013, Defendant filed a motion to dismiss, which was withdrawn after Plaintiff filed her amended Complaint on March 5, 2013.

The Amended Complaint alleged two causes of action sounding in gender discrimination and retaliation under Title VII.  On March 22, 2013, Defendant filed a motion to dismiss the

1

Complaint, and that motion was marked fully submitted on April 22, 2013.

## II.  **Facts**

The facts are taken from the Amended Complaint and the submissions of the parties.  The allegations of the Amended Complaint are accepted as true for the purposes of this motion, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), and do not constitute findings of fact by the Court.

Plaintiff is a U.S. citizen who maintains a permanent residence in Westbrook, Connecticut.  (AC ¶ 7).

Orient-Express Hotels, Ltd. ("OEH Ltd.") is a Bermuda-based company engaged in owning and managing luxury properties in the leisure and tourism sector.  (Def. Ex. B, 2011 Annual Report).  OEH Ltd. has 42 subsidiaries including OEHI, Orient-Express Services Ltd. ("OES Ltd.") and Cupecoy Village Development N.V. ("Cupecoy").  (Id.).

According to the Plaintiff, Defendant OEHI is a Delaware corporation with a principal place of business in the State of New York, which employs over 15 persons.  (AC ¶¶ 8-9).

According to the Defendant, OEHI employed only 12 persons, including Philip Gesue ("Gesue") and Catherine Armstrong ("Armstrong"). (Def. Ex. C, 2012 Payroll Budget). At all relevant times, OEHI's directors were Martin O'Grady and David Williams ("Williams") and its officers were Williams, President, John Landry, Jr., Vice President and Assistant Secretary, and Edwin Hetherington, Secretary.

Cupecoy is a subsidiary of OEH Ltd. and located in St. Maarten, Netherland Antilles. (AC ¶ 12). The company is incorporated under Dutch law and manages Porto Cupecoy, a luxury residential marina in St. Maarten. (Id. ¶¶ 14-15). Richard Seay ("Seay") was and is Cupecoy's Director of Sales at Porto Cupecoy. (Id. ¶ 16).

The Amended Complaint alleges that Seay began sending sexually offensive emails with disparaging comments to Plaintiff in the spring or summer of 2011. (AC ¶ 24). Plaintiff alleges that the harassing verbal comments and emails continued throughout the fall and winter of 2011. (See generally AC ¶¶ 25-28).

On February 1, 2012, Plaintiff and Seay allegedly both attended the Winter Concert Series at Porto Cupecoy, after which Seay grabbed and kissed Plaintiff in the mouth.  (Id. ¶ 30).  Plaintiff alleges that Seay thrust his tongue in her mouth, and then when she pulled away immediately, Seay stated, "I'm so sorry.  I'm so sorry."  (Id.).  Plaintiff's boyfriend arrived shortly thereafter and Plaintiff reported that she was in shock and cried all night.  (Id.).

According to the Amended Complaint, Plaintiff sent an email to Seay writing "That you did tonight was so wrong."  (Id. ¶ 32).  When Plaintiff got home, she also immediately emailed Gesue and Armstrong about the incident.  (Id. ¶ 33).  Gesue allegedly responded to Plaintiff via email discussing the seriousness of the situation and telling Plaintiff she could stay on paid leave.  (Id.).

On the morning of February 7, 2012, Plaintiff met with Carol Etheridge ("Etheridge"), the Director of Human Resources for OEHI, and Lucas Berman ("Berman"), an attorney.  According to the Amended Complaint, after asking Plaintiff about her past work with the Defendant, Etheridge allegedly said, "It sounds to me like you systematically got everyone fired, one by one.  This was all part of your plan.  Your next step is to get Richard

4

fired." (Id. ¶ 35). Etheridge also allegedly stated that "Richard (Seay) told us that he did kiss you, but that it was only the local St. Maarten type of kiss." (Id.). According to the Plaintiff, Etheridge then repeatedly asked her why she wished to work for Defendant when no one there liked her. (Id.).

According to the Plaintiff, no corrective action was ever performed despite her complaints. (Id. ¶ 36). Instead, on February 8, 2012, Plaintiff received a notice of termination letter from Defendant.

According to the Plaintiff, OEHI controls Cupecoy through "the interrelation of operations, common management, and centralized control of labor relations, common ownership and financial control." (AC ¶ 13). The AC alleges that, at all relevant times, OEHI and Cupecoy were the Plaintiff's joint employers, who began her employment as an Assistant Project Manager at Porto Cupecoy in November 2010. (Id. ¶¶ 17-20).

Plaintiff alleges that she was required to answer to and deal with a number of OEHI employees, including Armstrong, Gesue, Amy Finch and Jacob Margulies on a daily basis, even though she was in St. Maarten at Porto Cupecoy. (Id. ¶ 21).

5

She alleges that Gesue, as the Managing Director and Vice President of Global Real Estate for OEHI was responsible for hiring, terminating, and deciding payroll income for multiple employees at Cupecoy. (Id. ¶ 48). Gesue allegedly also had final authority for all major employment decisions and pay rates for Cupecoy employees. (Id. ¶ 68). Gesue's signature is allegedly on Plaintiff's termination letter and he also allegedly signed Cupecoy's employees' work contracts, including Seay's. (Id.; Id. ¶ 65).

Similarly, Plaintiff alleges that OEHI and Cupecoy had shared operations and management through Armstrong, Director of Real Estate Marketing, who was an OEHI employee who also ran all of Cupecoy's marketing, advertising and sales materials. (Id. ¶ 49). Plaintiff allegedly reported to Armstrong and Gesue on budget items, finances, invoicing, sales results and reports, and weekly traffic logs. (Id. ¶ 73).

Plaintiff also maintains that, among other things, she was required to submit reports and budgets to OEHI (Id. ¶ 51); new emails accounts for Cupecoy employees were created by OEHI's office in New York (Id. ¶ 50); Cupecoy shared their business records with OEHI (Id. ¶ 60); and that OEHI and Cupecoy regularly shared employees (Id. ¶ 93). Plaintiff alleges that

6

when she was out of the office between February 1 and 8, 2012, Armstrong flew into Cupecoy to perform Plaintiff's job duties in her absence. (Id. ¶ 74).

### III. **Rule 12(b)(1) and 12(b)(6) Standards**

A facially sufficient complaint may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 314 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942) (citations omitted). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Makarova, 201 F.3d at 113.

"[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted). As such, a court may rely on evidence outside of the

7

pleadings, including declarations submitted in support of the
motion and the records attached to these declarations.  See
Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss . .
. under Rule 12(b)(1), a district court . . . may refer to
evidence outside the pleadings.").


     As a precondition to filing an action in federal court
under Title VII, a plaintiff must have filed a timely charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC").  See 42 U.S.C. § 2000e-5(e)(1); Francis v. City of New
York, 235 F.3d 763, 766-67 (2d Cir. 2000).  However, in the
employment discrimination context, "the exhaustion requirement,
while weighty, is not jurisdictional."  Fernandez v. Chertoff,
471 F.3d 45, 58 (2d Cir. 2006).  "Filing of a timely charge of
discrimination with the EEOC is not a jurisdictional
prerequisite to suit in federal court, but [rather] a
requirement that, like a statute of limitations, is subject to
waiver, estoppels and equitable tolling."  Zipes v. Trans World
Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d
234 (1982).  Thus, a motion to dismiss on the basis that a
plaintiff failed to file a timely administrative charge is
analyzed under Rule 12(b)(6).  See Zimmelman v. Teachers'

Retirement Sys. of City of New York, No. 08 Civ. 6958(DAB)(DF), 2010 WL 1172769, at *5 (S.D.N.Y. 2010).[1]

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege

---

[1] In the instant record, it is unclear if Plaintiff has or will exhaust her administrative remedies and neither party has briefed this issue. However, a "district court's subject matter jurisdiction does not depend on the exhaustion of administrative remedies[,]" see O'Neal v. State Univ. of N.Y., No. 01-CV-7802, 2003 U.S. Dist. LEXIS 4404, at *13 (E.D.N.Y. Mar.24, 2003), and a filing of an EEOC claim "can be waived by the parties or the court." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000).

sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Cohen v. Stevanovich, 772 F. Supp. 2d 416, 423 (S.D.N.Y. 2010). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. (quoting Twombly, 550 U.S. at 555).

## IV.  Discussion

Plaintiff has filed the instant lawsuit against OEHI, as the sole defendant, but not Cupecoy nor its parent company, OEH Ltd.  It appears that Plaintiff makes two arguments under the single employer and joint employer doctrines.  First, Plaintiff maintains that OEHI was her joint employer, along with Cupecoy, which provides for liability under Title VII.  Next, she contends that OEHI, though its management, controlled the manner and means by which Cupecoy's employees work was accomplished.  Thus, Plaintiff appears to apply the single employer doctrine in which Cupecoy is a foreign corporation that is controlled by the American employer OEHI.

10

In contrast, Defendant contends that, under this Circuit's jurisprudence, Plaintiff's Title VII claims fail as a matter of law because OEHI was never Plaintiff's employer.  It maintains that the Plaintiff has failed to demonstrate that she was jointly employed by Cupecoy and OEHI, which necessitates the dismissal of her claims.[2]

A) <u>Defendant OEHI May Be a Joint Employer of the Plaintiff</u>

Title VII prohibits discriminatory employment practices by an "employer."  An employer under Title VII is "a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."  42 U.S.C. § 2000e(b).  The number of employees a defendant has is a substantive element of a plaintiff's Title VII claim.  <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 503, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (noting that "the employee-numerosity requirement relates to the substantive adequacy of [plaintiff's claim.]"); <u>see also Kern v. City of Rochester</u>, 93 F.3d 38, 45 (2d Cir. 1996) (affirming

---

[2] There appears to be some disagreement between the parties as to which standards apply to an analysis of single and joint employers.  The applicable and proper standards for both analyses are discussed below.

11

dismissal where the district court found that defendant lacked
requisite number of employees, without leave to amend).
However, "[t]he definition of 'employer' has been construed
liberally for Title VII purposes and does not require a direct
employer/ employee relationship." Lima v. Addeco, 634 F. Supp.
2d 394, 399 (S.D.N.Y. 2009) (citations omitted); see also Cook
v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995)
(stating that the term "employer" is "sufficiently broad to
encompass any party who significantly affects access of any
individual to employment opportunities, regardless of whether
the party may technically be described as an 'employer' . . . at
common law.") (citation and quotation omitted).

        Courts in this Circuit have adopted two exceptions to
the rule that employment discrimination may be maintained only
against a plaintiff's direct employer.  First, under the "single
employer doctrine," liability may be found "when two nominally
separate entities are part of a single integrated enterprise."
Lima, 634 F. Supp. 2d at 399-400 (quoting Arculeo v. On-Site
Sales v. Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)) (internal
quotation marks omitted); see also Gulino v. N.Y. State Edu.
Dep't, 460 F.3d 361, 378 (2d Cir. 2006) (noting use of single
employer analysis where plaintiff's employment is subcontracted
to another employer).

Second, under the "joint employer doctrine," liability may be found when "separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." Lima, 634 F. Supp. 2d at 400 (quoting Gore v. RBA Grp., Inc., No. 03 Civ. 9442, 2008 WL 857530, at *3 (S.D.N.Y. Mar. 31, 2008)). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violation of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." Arculeo, 425 F.3d at 198.

In this regard, the Second Circuit has "not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII . . . The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." Id. at 199 n.7 (citing Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 72 (2d Cir. 2003)) (articulating a six-part joint employer test in the context of an alleged violation of the Fair Labor Standards Act).[3] The

---

[3] The Zheng factors include: "(1) whether [defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint

Zheng Court, for example, directed the district court to apply an "economic realities" test based on "the circumstances of the whole activity" to determine whether independent entities function as a joint employer. Id. at 71-72 (stating that "[t]he court is also free to consider any other factors it deems relevant to its assessment of the economic realities."). Other courts have found a joint employer relationship in the discrimination context where "there is sufficient evidence that the defendant had immediate control over the formal employer's employees." Dupree v. Urban Homesteading Assistance Bd. Sterling St. Hous. Dev. Fund Corp., No. 10 Civ. 1894(JG)(JO), 2011 WL 1343163, at *6 (E.D.N.Y. Apr. 8, 2011) (internal quotation marks and citations omitted). Relevant factors may include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Id.

Here, under either the economic realities or the immediate control test, Plaintiff has alleged facts sufficient to show that OEHI may have jointly employed her along with Cupecoy. Plaintiff has submitted an affidavit naming several

---

employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [] Defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [] Defendants." Zheng, 355 F.3d at 72.

Cupecoy employees who reported to OEHI employees. (Pl. Memo. in Opp., Ex. 2). She has alleged that she was required to have daily contact with, and report to, several OEHI employees via email and phone. (See e.g., AC ¶¶ 21, 73). Plaintiff also maintains that Cupecoy's major employment decisions, including hiring and termination, and Cupecoy's marketing, advertising and sales were handled by OEHI employees. (Id. ¶¶ 49, 68). For example, Etheridge, the Director of Human Resources for OEHI, allegedly came to Porto Cupecoy to handle Plaintiff's sexual harassment claims. In addition, Gesue, the Managing Director and Vice President of Global Real Estate for OEHI, allegedly had final authority on Plaintiff's termination. (Id. ¶ 68). Thus, considering the "the circumstances of the whole activity" and the relevant factors exhibiting control, the Amended Complaint raises issues of fact as to the potentially integrated nature of OEHI and Cupecoy, and how those entities relate to each other and OEH Ltd.

However, "[e]ven where two companies are deemed a joint employer, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII." Goodman v. Port Authority of New York and New Jersey, 850 F. Supp. 2d 363, 387 (S.D.N.Y. 2012). As the litigation advances, Defendant is entitled to demonstrate that the entities are

15

actually separate or that they should not be liable for Seay's conduct.  For the purposes of this motion, however, whether OEHI and Cupecoy were Plaintiff's joint employers is a question of fact, and it is undisputed that, if true, the companies employed enough people in New York to meet all relevant jurisdictional thresholds.  The motion to dismiss is therefore inappropriate on these grounds.

A) Cupecoy May Be "Controlled" By OEHI

Title VII sets forth four factors to be considered in assessing whether a foreign corporation is "controlled" by an American employer: "(1) the interrelation of operations; (2) the common management; (3) the centralized control of labor relations; and (4) common ownership or financial control."  42 U.S.C. § 2000e-1(c)(3).  "Although some case law suggests that the application of this provision is tantamount to piercing the corporate veil, such case law also instructs that the four factors comprising the single employer doctrine are flexible and that no one factor is determinative."  Levine v. Reader's Digest Ass'n, Inc., No. 06 Civ. 590(CLB), 2007 WL 4241925, at *6 (S.D.N.Y. Nov. 30, 2007) (citing Murray v. Miner, 74 F.3d 402 404 (2d Cir. 1996)); see also Kull v. Davidoff of Geneva (N.Y.), Inc., No. 01 Civ. 4831(LMM), 2004 WL 1418088, at *7 (S.D.N.Y.

June 23, 2004) (stating that "[n]o one factor is controlling, and not every factor is required." Kull v. Davidoff of Geneva (N.Y.), Inc., No. 01 Civ. 4831(LMM), 2004 WL 1418088, at *7 (S.D.N.Y. June 23, 2004). "Whether the entities can be joined as a single employer is a question of fact." Id. (citing Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996)).

Courts applying this test have focused on the third factor – the centralized control of labor relations. See e.g., Cook, 69 F.3d at 1240; Toriola v. New York City Transit Authority, No. 02 Civ. 5902(RJH), 2005 WL 550973, at *5 (S.D.N.Y. Mar. 9, 2005). In Cook, the Second Circuit adopted the Fifth Circuit's holding that "the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" Cook, 69 F.3d at 1240; see also Schade v. COTY, Inc. 00 Civ. 1568(JGK), 2001 WL 709258, at *6 (S.D.N.Y. June 25, 2001). In addition, "the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation . . . ." Herman v. Blockbuster Entertainment Group, 18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998).

17

According to Defendant, Plaintiff's contentions are
conclusory and unsupported because the fact "that OEHI employees
sometimes traveled to Cupecoy and communicated with Cupecoy
employees is insufficient" to withstand a motion to dismiss.
(Def. Motion in Opp. at 5).  Defendant maintains that at no time
has OEHI "supervised Cupecoy's day-to-day operations; made
Cupecoy's decision on hiring, discipline, and termination of its
employees; received Cupecoy's employment applications; approved
Cupecoy's personnel status reports; had final authority for all
major employment decision for Cupecoy; or, routinely shifted
employees between itself and Cupecoy."  (Id. at 2-3).

To support its position that OEHI's one-time
investigation of Plaintiff's allegations does not indicate a
day-to-day control over her employment, Defendant string cites
to a number of cases in which a plaintiff's failure to prove
that the alleged parent controlled all of the day-to-day
employment matters of the other entity led to a dismissal of her
claims.  (See id. at 8-9).  These decisions, including Ruhling
v. Tribune Co., which Defendant finds particularly instructive,
however, were adjudications of motions for summary judgment or
appeals after a trial.  See e.g., No. 04 Civ. 2430(ARL), 2007 WL
28283 (E.D.N.Y. Jan. 3, 2007) (motion for summary judgment);
Dewey v. PTT Telecom Neth., 101 F.3d 1392 (2d Cir. 1996) (appeal

18

of grant of summary judgment); Guippone v. BH S&B Holdings, LLC,
No. 09 Civ. 1039(CM), 2011 WL 6288396 (S.D.N.Y. Dec. 15, 2011)
(motion and cross-motion for summary judgment); Woodell v.
United Way, 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005) (motion for
summary judgment); Gargano v. Diocese of Rockville Centre, 888
F. Supp. 1274, 1278 (E.D.N.Y. 1995) (denial of motion for
judgment as a matter of law after a jury verdict).  In such
cases, the court examined an established record and evidence
obtained through the discovery process, in deciding whether
there existed a genuine issue of material fact to deny or grant
summary judgment.  See Fed. R. Civ. P. 56(c).  By contrast,
"[b]ecause there has been no discovery . . . Plaintiff 'need
only make legally sufficient allegations of jurisdiction through
its pleadings and affidavits in order to survive a motion to
dismiss.'"  DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc.,
No. 07 Civ. 3746, 2007 WL 4325893, at *2 (S.D.N.Y. Dec. 4, 2007)
(quoting Treeline Inv. Partners, LP v. Koren, No. 07 Civ.1964,
2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007)).


        Here, Plaintiff has alleged facts that suggest that
OEHI and Cupecoy may be an integrated enterprise.  As discussed
above, the centralized control of labor relations is the most
important factor and courts focus relevant factors including
"whether the subsidiary has a separate human resources

19

department, whether the subsidiary establishes its own policies
and makes it[s] own decisions as to hiring discipline, and
termination of its employees." Duncan v. American Int'l Group,
Inc., No. 01 Civ. 9269(AGS), 2002 WL 31873465, at *3 (S.D.N.Y.
Dec. 23, 2002).  Plaintiff has alleged that Gesue, a Managing
Director and Vice President of OEHI, signed Plaintiff's
termination letter and made certain hiring decisions for
Cupecoy, including hiring Seay.  She has also alleged that
Etheridge, the Director of Human Resources for OEHI,
investigated Plaintiff's claim, interviewed Plaintiff and
personally fired Plaintiff.  These facts, if true, would
certainly demonstrate that OEHI and its employees were involved
with the negative employment decision by which Plaintiff
allegedly was injured.

        A brief examination of the other three, less
significant, factors of interrelation of operations, common
management and common ownership or financial control also
suggest that OEHI may be considered Plaintiff's employer.  While
the operations of OEHI and Cupecoy are geographically separate,
Plaintiff alleges that certain budget, sales and marketing are
handled by OEHI for Cupecoy.  In addition, according to
Plaintiff, OEHI and Cupecoy shared business records and
repeatedly transferred employees, including Etheridge, Armstrong

20

and Gesue, between the two entities.  Plaintiff also alleges
that when she was out of the office between February 1 and 8,
2012, Armstrong flew into Cupecoy to perform Plaintiff's job
duties in her absence.  Thus, there appears to be some factual
issues as to whether OEHI and Cupecoy's operations and
management are interrelated.

With regards to ownership and financial control,
Plaintiff maintains that OEHI and Cupecoy are both commonly
owned subsidiaries of OEHI Ltd.  While the entities may have a
common corporate parent, this fact, standing alone, is
insufficient to establish that the OEHI and Cupecoy are a single
employer.  However, at this stage of the litigation, additional
facts may be obtained through discovery and it is inappropriate
to dismiss the claims on this basis.

Taken together, Plaintiff has presented facts that, if
true, plausibly demonstrate that Cupecoy may be controlled by
OEHI, and that the entities may act as a single employer.  As
discussed above, as the litigation advances, Defendant may
demonstrate that Cupecoy is not a foreign corporation
"controlled" by OEHI, the American employer.  Plaintiff,
however, has pled sufficient facts for the purposes of the

instant motion.   The motion to dismiss is therefore
inappropriate on these grounds.

## III. Conclusion

Upon the facts and conclusions set forth above, the
motion of the Defendant is denied.

It is so ordered.

New York, NY
August 6 , 2013

ROBERT W. SWEET
U.S.D.J.

22